R. Joseph Trojan  CA Bar No. 137,067
(trojan@trojanlawoffices.com)
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-777-8348

Attorneys for Plaintiffs,
TOKAI CORP., SCRIPTO-TOKAI CORP.,
and CALICO BRANDS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOKAI CORP., a Japanese corporation, SCRIPTO-TOKAI, INC., a Delaware corporation, and CALICO BRANDS, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>EASTON ENTERPRISES, INC., d.b.a. EASTON SALES, a California corporation, and FLI, INC., a California corporation,<br><br>Defendants. | CASE NO. EDCV 07-0883 VAP (FMOx)<br><br>**PLAINTIFFS' REPLY CLAIM CONSTRUCTION BRIEF**<br><br>Hearing Date: January 12, 2009<br>Hon. Virginia A. Phillips |

-1-

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................1

II.  SUPPORT FROM INTRINSIC EVIDENCE IS HEAVILY FAVORED OVER DICTIONARY DEFINITIONS AND OTHER EXTRINSIC EVIDENCE ........................................................................................................1

III. CLAIM CONSTRUCTION ............................................................................2

    A.   Construction of "interferes" (the '775 Patent, Claim 1) ........................2

        i.    Judicial estoppel does not apply in this case ..............................2

        ii.   Defendants use extrinsic evidence instead of the ordinary meaning of the whole claim limitation to construe "interferes." ............................................................................5

        iii.  The several embodiments of the invention show that the patentee contemplated a variety of ways for the locking member to interfere with the operation member ........................6

        iv.   The dictionary includes several relevant definitions of "interfere" that do not require direct contact ...............................6

    B.   Construction of "interferes" (the '308 Patent, Claim 1) ........................7

    C.   Construction of "prevents" (the '308 Patent, Claim 10; and the '017 Patent, Claim 1) ...............................................................................7

    D.   Construction of "locking means" (the '017 Patent, Claim 1) ................8

V.   CONCLUSION ...............................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Biomedical Patent Management Corp. v. California, Dept. of Health Services*
    505 F.3d 1328, 1341 (Fed. Cir. 2007) ...................................................... 2, 3

*Biomedino, LLC v. Waters Technologies Corp.*
    490 F.3d 946 (Fed. Cir. 2007) ................................................................... 9

*Hamilton v. State Farm Fire & Cas. Co.*
    270 F.3d 778 (9th Cir. 2001) ..................................................................... 4

*New Hampshire v. Maine*
    532 U.S. 742 (2001) ............................................................................. 1, 3

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005) ...................................................... 1, 2, 5, 7

*Trimed Inc. v. Stryker Corp.*
    514 F.3d 1256 (Fed. Cir. 2008) ............................................................ 10, 11

*United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*
    512 F.3d 555 (9th Cir. 2008) ..................................................................... 3

*Vitronics Corp. v. Conceptronic, Inc.*
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................... 2

*Whittaker Corp. by Technibilt Div. v. UNR Industries, Inc.*
    911 F.2d 709 (Fed. Cir. 1990) ................................................................... 6

**INDEX TO EXHIBITS**

Exhibit 1    U.S. Patent No. 4,904,180 issued to Nitta

Exhibit 2    Dictionary.com's definition of interfere
(dictionary.reference.com/browse/interfere)

-1-

Plaintiffs, Tokai Corp., Scripto-Tokai Corp., and Calico Brands, Inc., ("Plaintiffs") hereby respectfully submit this Reply Claim Construction Brief.[1]

## I. PRELIMINARY STATEMENT

Defendants Easton Enterprises, Inc. and Fun Line Industries, Inc. ("Defendants") make numerous unsupported contentions. For example, Defendants argue that judicial estoppel supports their claim construction, yet fail to even make the basic argument that judicial estoppel is applicable to the current facts. *See* Defendants' Opening Claim Construction Brief ("D.Br.") at 4-6 (Defendants cite to the Supreme Court's authoritative case in *New Hampshire v. Maine*, 532 U.S. 742 (2001), but neglected to analyze the current case under the *New Hampshire* factors). Defendants also claim that ordinary meaning supports their position, yet they attempt to confuse the Court by using extrinsic evidence to derive the definition of a phrase that has no ordinary meaning. *See* D.Br. at 7-8 (Defendants use the dictionary meaning of "engage" to infer the definition of "engagement section," which is the patentee's own phrase and has no ordinary meaning in the art). Defendants' contentions lack both a legal basis and a factual foundation.

## II. SUPPORT FROM INTRINSIC EVIDENCE IS HEAVILY FAVORED OVER DICTIONARY DEFINITIONS AND OTHER EXTRINSIC EVIDENCE

The Federal Circuit has specifically cautioned courts against placing "too much reliance on extrinsic sources such as dictionaries, treatises, and encyclopedias and too little on intrinsic sources, in particular the specification and prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005). The

---

[1] The patents at issue in this case are U.S. Patent No. 5,697,775 ("'775 Patent"), U.S. Patent No. 5,897,308 ("'308 Patent"), and U.S. Patent No. 6,093,017 ("'017 Patent"), all relating to utility lighter child safety technology. *See* Declaration of R. Joseph Trojan in support of Plaintiff's Opening Claim Construction Brief ("Trojan Decl.") ¶2, Exhs. 1, 2, and 3 respectively. The Joint Claim Construction and Prehearing Statement showing the parties' proposed claim constructions was filed on November 10, 2008. *See* Trojan Decl. ¶4, Exh. 4.

-1-

specification "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id*. at 1321, quoting *Vitronics*, 90 F.3d at 1582 (internal quotes omitted). While Plaintiffs' opening brief cites to the patent specifications for support of Plaintiffs' claim constructions, Defendants must rely on extrinsic evidence because the patent specifications do not support Defendants' claim constructions.

### III. CLAIM CONSTRUCTION

The claims currently asserted are claim 1 of the '775 Patent; claims 1, 10, and 13 of the '308 Patent; and claims 1, 3, and 4 of the '017 Patent. *See* Trojan Decl. ¶5. A summary of the parties' proposed claim constructions can be found in the Joint Claim Construction Statement. *See* Trojan Decl., Exh. 4.

### A.   Construction of "interferes"  (the '775 Patent, Claim 1)

Defendants elected to construe just the claim limitation "interferes," contending that "interferes" requires direct contact. As shown in Plaintiffs' opening brief, the patent specification supports Plaintiffs' construction of the term "interferes." *See* P.Br. at 3-5. To the extent that the Court requires extrinsic evidence, Plaintiffs direct the Court to the same dictionary source used by Defendants to scrutinize Defendants' construction of the claim term.

#### i.   Judicial estoppel does not apply in this case.

Defendants purport that Plaintiffs are judicially estopped from asserting that "interferes" does not require direct contact. *See* D.Br. at 4. However, Defendants' argument for applying judicial estoppel is misleading, at best. Because judicial estoppel is not a matter unique to patents, the Federal Circuit "look[s] to Ninth Circuit law to address this issue." *Biomedical Patent Management Corp. v. California, Dept. of Health Services*, 505 F.3d 1328, 1341 (Fed. Cir. 2007). The Supreme Court has identified three factors to consider in determining whether judicial estoppel applies, including:

-2-

> (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or second court was misled;" and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Biomedical Patent Management*, 505 F.3d at 1341, quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-751 (2001). It is not surprising that Defendants failed to analyze the facts under the three factors. A careful review of the facts shows that these factors have not been met.

First, the statements must be clearly inconsistent. *See United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555, 563-564 (9th Cir. 2008)(Statements "arguing that a party is **proper** and should not be dismissed, and arguing that a party is **necessary** and the litigation cannot proceed without it" are not clearly inconsistent. (Emphasis added)). As emphasized in Plaintiff's opening brief, the disclosure of embodiments where the locking member and the trigger **can** come into direct contact does not mean that the invention **must** have that feature. *See* P.Br. at 3-4. Plaintiffs' position in *Tokai Corp. v. Newell Rubbermaid, Inc.*[2] is not to the contrary.

In distinguishing the '775 patent from U.S. Patent No. 4,904,180 issued to Nitta ("Nitta patent")[3], Plaintiffs focused on the fact that **in the Nitta patent, the locking member (*i.e.*, stopper 11) interferes with the user's thumb rather than with the operation member (*i.e.*, trigger button 4)**. *See* Joint Claim Construction Statement, Easton Exhibit 1 (Memorandum of Points and Authorities in Support of

---

[2] C.D. Cal. case no. 2:06-CV-01064 PA (PJWx). The Court should note that the Plaintiffs in that case did not include Calico Brands, Inc.
[3] The Nitta patent has been attached as Exhibit 1 of R. Joseph Trojan's Declaration in Support of Plaintiffs' Reply Claim Construction Brief ("Trojan Reply Decl.").

-3-

Plaintiffs' Motion for Summary Judgment and Adjudication re: Infringement and Validity of U.S. Patent Nos. 5,697,775, 5,897,308, and 5,743,724; hereinafter "Plaintiffs' Motion for Summary Judgment" or "Easton Exh. 1") at 27-28. The Nitta patent teaches that in the locked position "with the stopper 11 on top of the trigger button 4, stopper 11 inhibits a user's thumb from pushing down on button 4." *Id*. Defendants' references to "direct physical engagement" tangentially referred to specific embodiments and were not dispositive to the substantive issue. Plaintiffs' argument in *Tokai v. Newell* is stated as follows:

> The operating principle of the Nitta patent is based on the use of the stopper 11 as a cover guard to prevent the user from pressing down on the trigger button 4. The stopper 11 has to slide out of interference with the mount 7 in order for the user to actuate the trigger 4. Under this operating principle, there is no direct locking engagement between the stopper 11 and the trigger button 4. *See* Statement at ¶¶ 84-86. **In other words, the stopper 11 does not block movement of the trigger button 4 directly; rather, it prevents the user from pushing down on the trigger button 4.** *See id*. **Thus, the Nitta patent cannot be said to teach a "locking member [having] an engagement section, which interferes with a portion of the operation member and thereby locks the lighting operation of the operation member," as recited in claim 1 of the '775 patent**.

Easton Exh. 1 at 27-28 (emphasis added).

Second, Plaintiffs never succeeded in arguing that "interferes" required direct contact. The Ninth Circuit "has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001). The Court in *Tokai v. Newell* did not rule on the motion for summary judgment prior to settlement of the case. Moreover, the claim limitation "interferes" was never construed in *Tokai v. Newell* because Plaintiffs were not required to construe that limitation in order to overcome the prior art references.

-4-

Plaintiffs' argument in *Tokai v. Newell* involved the phrase "which interferes with a portion of the operation member" and **not** the word "interferes."

Third, Defendants are also unable to contend that they are unfairly prejudiced because they are not prevented from advocating their construction of "interferes." Defendants can still argue that the claim term "interferes" requires direct contact; however, judicial estoppel cannot be one of the bases upon which they rely.

### ii. Defendants use extrinsic evidence instead of the ordinary meaning of the whole claim limitation to construe "interferes."

Defendants contend that the ordinary meaning of the whole claim limitation supports their construction of "interferes," yet Defendants must use extrinsic evidence and sleight-of-hand tactics in order to achieve such a conclusion. *See* D.Br. at 7-8. First, Defendants rely on extrinsic evidence (*i.e.*, a dictionary) on the unrelated claim limitation "engaged." *See Id*. at 7. The term "engaged" only appears once in a dependent claim of the '017 patent, a patent that does not even contain the term "interferes" in any of its claims. *See* Trojan Decl., Exh. 3 (col. 45, l. 7).

Second, Defendants impermissibly extrapolate the dictionary meaning of "engaged" to construe the meaning of "engagement section," which appears in the '775 patent, but not the '017 patent. *See* D.Br. at 7. The patentee can be his own lexicographer and may create special terms and definitions. *See Phillips v. AWH Corp*., 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("[We] recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."). The claim limitation "engagement section" has no ordinary meaning in the art and is merely used by the patentee to describe a part of the invention. However, Defendants use the dictionary definition of "engaged" to construe the claim limitation "engagement section," but the specification does not

-5-

support Defendants' contention that the definition of "engagement section" should be inferred from the dictionary definition of "engaged." *See* D.Br. at 7.

Finally, Defendants distract the Court with the unrelated claim limitation "a portion of." *See Id*. at 8. Claims have to be read based on a presumption of validity. *See Whittaker Corp. by Technibilt Div. v. UNR Industries, Inc*., 911 F.2d 709, 712 (Fed. Cir. 1990) ("claims are generally construed so as to sustain their validity, if possible"). Defendants also argue that Plaintiffs' construction would render the claim "nonsensical because the engagement section or the locking member does not only hinder the movement of a portion of the operation member; rather, it hinders the movement of the **entire** operation member." D.Br. at 8 (emphasis in original). Defendants' argument hinges on the presumption that the locking member must hinder the movement of the **entire** operation member in order to lock the lighting operation; however, nothing in the specification requires such a limitation. The claim language simply contemplates and includes possible embodiments where the lighting operation can be locked by interfering with a portion of the operation member rather than the entire operation member.

### iii. The several embodiments of the invention show that the patentee contemplated a variety of ways for the locking member to interfere with the operation member.

Defendants contend that the term "interfere" is used to "denote direct contact throughout the specification." D.Br. at 9. Defendants then reference only one preferred embodiment of the invention to illustrate their point. *Id*. at 10. However, as stated in Section IV.A of Plaintiffs' Opening Claim Construction Brief, other embodiments of the invention show that the claim does not require that the locking member directly contact the operation member. *See* P.Br. at 2-5.

### iv. The dictionary includes several relevant definitions of "interfere" that do not require direct contact.

-6-

One of the Federal Circuit's concerns over the use of dictionaries is that "different dictionaries may contain somewhat different sets of definitions for the same words." *Phillips*, 415 F.3d at 1322. Similarly, there may be several different definitions of a word within a single dictionary, which allows parties to pick and choose the one most favorable to them. Defendants use the third definition of "interfere" listed on their exhibit to support their contention that "interfere" requires direct contact. *See* D.Br. at 11. Oddly, Defendants' copy of the dictionary website is missing the first two (and arguably the more relevant) definitions of the claim term "interferes." *See* Easton Exh. 4. The missing first two definitions of "interfere" are the following:

> 1. to come into opposition, as one thing with another, esp. with the effect of hampering action or procedure (often fol. by with): Constant distractions interfere with work.
> 2. to take part in the affairs of others; meddle (often fol. by with or in): to interfere in another's life.

Trojan Reply Decl., Exh. 2.

The definitions quoted above reflect the usage that appears in the asserted claims, namely that the claim uses the phrase "interferes with" rather than just "interferes." *See* Trojan Decl., Exh. 1 (col. 25, l. 11). As the Court will note, neither of these definitions requires direct contact.

**B.   Construction of "interferes" (the '308 Patent, Claim 1)**

Defendants' argument for this term is largely the same as their arguments addressed above in Section IV.A, *supra*. Again, Defendants construe "interferes" to require direct contact, but lack adequate support for their contentions.

**C.   Construction of "prevents" (the '308 Patent, Claim 10; and the '017 Patent, Claim 1)**

Defendants' construction and argument for the claim term "prevents" mimics their construction and argument for the claim term "interferes." Defendants

-7-

impermissibly import the claim limitation "directly contacts" into the unrelated claim term "prevents." However, there is no case law that supports Defendants' apparent contention that **different** terms in **separate** patents should be given the same definition; such an approach defies logic. As discussed in Section IV.D of Plaintiffs' Opening Claim Construction Brief, it is clear from the claim language that the claim term "prevents" is used as an antonym of "allows." *See* P.Br. at 13-14.

Defendants provide no support from the specification of the patents. Instead, they refer back to Plaintiffs' Memorandum in *Tokai v. Newell*, which, as discussed in Section IV.A, *supra.*, is irrelevant to the claim term "interferes" and is also irrelevant to the claim term "prevents." *See* D.Br. at 13. Defendants make no other argument that the claim term "prevents" requires direct contact.

### D.   Construction of "locking means"  (the '017 Patent, Claim 1)

The term "locking means" cannot be interpreted under the means-plus-function limitation in the context of the claim and the specification. The claim itself recites a "locking means, which is supported for rotation on the main body to be rotatable between a locking position where it prevents the lighting operation of the operation member and a lock release position where it permits the lighting operation of the operation member, and an urging means which urges the locking means toward the locking position." *See* P.Br., Exh. 3 (col. 44, ll. 58-65). This can only be interpreted as a structure that is mounted on a lighter case and capable of rotating between two positions. On this basis alone, the locking means cannot be interpreted to be purely functional language with no structure. The locking means structure is further defined by the functional language in the claim and its interrelations with the operation member and urging means, and is therefore sufficient to perform the function of preventing and allowing the lighting of a lighter in its entirety.

Defendants cite *Biomedino LLC v. Waters Technologies Corporation*, quoting *Altiris, Inc. v. Symantec*, to support its position that there is insufficient structure set forth to perform the claimed function. *See* Defendants' Claim Construction Brief at p.14. But the facts here are distinguishable from those of *Biomedino*. In *Biomedino*, the Federal Circuit interpreted the term "control means" under the means plus function limitation because no structure was recited in the claim or specification. *Biomedino, LLC v. Waters Technologies Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007). The claim recited a "control means for automatically operating said valving" and a "control means for automatically operating said valves." *Id*. at 949. The only references in the specification to the "control means" were a box labeled "Control" in a figure and a statement that the invention "may be controlled automatically by known differential pressure, valving and control equipment." *Id*. The Federal Circuit, quoting the district court, reaffirmed both the position that "'[t]he specification says nothing more than that unspecified equipment may be used to control the regeneration process'" and the holding that "'[t]he failure to disclose a structure corresponding to the 'control means' function makes [the] claims … of indefinite scope in violation of §112.'" *Id*. To support its holding, the Federal Circuit also agreed with the district court that the "'reference to 'control' is simply an adjective describing 'means:' [sic] it is not a structure or material capable of performing the identified function.'" *Id*. at 950.

Unlike in *Biomedino*, here, the term "locking" is not simply an adjective describing "means," the locking means in itself is a structure capable of performing the identified function. The claim expressly recites a "locking means which is supported for rotation on the main body to be rotatable between a locking position where it prevents the lighting operation of the operation member and a lock release position where it permits the lighting operation of the operation member, and an urging means which urges the locking means toward the locking position." *See*

Plaintiffs' Opening Claim Construction Brief, Exh. 3 (col. 44, ll. 58-65). This is certainly more than the complete absence of structure in *Biomedino*. The locking means has express structural limits: it is a structure that is (1) mounted on the main body; (2) rotatable between a locking position and lock release position to perform its function in its entirety, i.e., to prevent lighting in the locking position and permit lighting in the lock release position; and (3) structured so that it is urged by an urging means toward the locking position. Here, "locking means" recites sufficient structure and should not be interpreted under the means-plus-function limitation.

Defendants also cited *Trimed v. Stryker* to support the contention that the "locking means" should be construed as a means-plus-function claim limitation. *See* Defendants' Claim Construction Brief at pp.14-15. Analogizing the facts here to this case actually supports Plaintiffs' assertion that "locking means" should **not** be construed as a means-plus function claim limitation. In *Trimed*, the claim recited "a plurality of holes … said holes in said plate providing means for allowing the pin to slide axially therein but preventing compression across the fracture, and stabilizing said near end of the pin against displacement in the plane of the plate." *Trimed Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008). The Federal Circuit did not construe the claim under the means-plus-function limitation:

> the claim discloses functions for the holes – allowing a pin to slide axially through the pin plate while preventing compression across the bone facture, and stabilizing the exposed end of the pin against displacement in the plane of the plate. As our precedent makes clear, the presence of the word "means" and the articulation of a function is not the end of the inquiry. Just as clearly, the claim articulates the structure for performing the claimed functions – the holes. **The functional language defines the size and shape of the claimed holes.** The interior of the holes must be shaped to allow pins to slide through axially while the boundaries of the holes must be sized appropriately to hold the pins in place and limit their movement across the plane of the plate. The claim language makes clear that the structure for performing these functions is the holes themselves.

-10-

*Trimed*, 514 F.3d at 1260 (emphasis added).  Here, the claim language makes clear that the structure for performing the function of preventing and allowing the lighting of the lighter in its entirety is the "locking means."  Also, just like the holes' structures in *Trimed* were defined by the functional language in the claim, the "locking means" structure here is defined by the functional language in the claim.  The locking means must be shaped to (1) be supported on the main body; (2) have a locking position and lock release position in which it is capable of rotating between; (3) prevent lighting in the locking position; (4) permit lighting in the release position; and (5) urged by an urging means toward the locking position.  Here, the locking means is the exact structure that performs the function in its entirety and specifically how it performs the recited functions is also described in the claim.

For the aforementioned reasons, and under the standards set forth in *Biomedino*, *Trimed*, and *Altiris*, the claim recites sufficient structure to rebut the presumption that the inventor used the term "means" to invoke the means-plus-function limitation.  Accordingly, "locking means" should not be construed as a means-plus-function limitation.

//
//
//
//
//
//
//
//
//

-11-

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt their claim construction.

Dated: December 5, 2008                    TROJAN LAW OFFICES


 /s/ R. Joseph Trojan
R. Joseph Trojan
Attorneys for Plaintiffs
TOKAI CORP., SCRIPTO-TOKAI CORP.,
and CALICO BRANDS, INC.

-12-