O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TOKAI CORP., etc., et al., | ) ) ) | Case No. EDCV 07-883-VAP(FMOx) |
| Plaintiffs, | ) ) | **CLAIM CONSTRUCTION ORDER** |
| v. | ) ) | |
| EASTON ENTERPRISES, INC., etc., et al., | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

The Court conducted a hearing on January 23, 2009, on the parties' proposed construction of certain terms in the three Patents in Suit: Claim 1 of the '775 Patent and Claim 1 of the '308 Patent; Claim 10 of the '308 Patent; and Claim 1 of the '017 Patent, pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc) aff'd, 517 U.S. 370 (1996). Having considered the written submissions from both parties, as well as the arguments presented at the hearing, the Court now issues its claim construction order.

# I.   INTRODUCTION

Plaintiffs Tokai Corporation, Scripto-Tokai Corporation, and Calico Brands, Inc. hold the three patents at issue in this suit, U.S. Patent Nos. 5,697,775, ("the '775 Patent"), 5,897,308 ("the '308 Patent"), and 6,093,017 ("the '017 Patent").  All three patents relate to safety devices on utility lighters designed to prevent accidental lighting.

Plaintiffs sued Defendants Easton Enterprises, Inc. and Fun Line Industries, Inc. on July 17, 2007, alleging infringement of the patents-in-suit.  In this context, the parties seek construction of certain terms in the three patents.

# II.   LEGAL STANDARD

Claim construction is a legal question for the Court. Markman, 517 U.S. at 390; Cyborg Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  To construe the claim, a court may consider the claim, the specifications, and the prosecution file history. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).

The Court begins its construction of a patent claim with the words of the claim itself, which "are generally given their ordinary and customary meaning . . . , the

1   meaning that the term would have to a person of ordinary
2   skill in the art in question . . . as of the [patent's]
3   effective filing date."  <u>Phillips</u>, 415 F.3d at 1312-13.
4
5       The Court looks to the patent specifications when
6   construing "the meaning of a claim term as it is used by
7   the inventor in the context of the entirety of his
8   invention. . . ."  <u>Comark Comm. v. Harris Corp.</u>, 156 F.3d
9   1182, 1187 (Fed. Cir. 1998).  Furthermore, in the
10  <u>Phillips</u> case, the Federal Circuit emphasized the
11  specification's critical importance: it "is always highly
12  relevant to the claim construction analysis.  Usually it
13  is dispositive; it is the single best guide to the
14  meaning of a disputed term."  <u>Phillips</u>, 415 F.3d at 1315
15  (quoting <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d
16  1576, 1582 (Fed. Cir. 1996)).
17
18      The prosecution history, like the specifications,
19  provides evidence of how the Patent Officer and the
20  inventor understood the patent.  <u>Phillips</u>, 415 F.3d at
21  1317 (citing <u>Lemelson v. Gen. Mills, Inc.</u>, 968 F.2d 1202,
22  1206 (Fed. Cir. 1992)).  The prosecution history
23  "represents an ongoing negotiation between the PTO and
24  the applicant, rather than the final product of that
25  negotiation, it often lacks the clarity of the
26  specification and thus is less useful for claim
27  construction purposes."  <u>Id.</u> (citing <u>Inverness Med.</u>
28

3

Switz. GmBH v. Warner Lambert Co., 309 F.3d 1373, 1380-82
(Fed. Cir. 2002); Athletic Alternatives, Inc. v. Prince
Mfg., Inc., 73 F.3d 1573, 1580 (Fed. Cir. 1996)).  The
prosecution history, however, is important because it can
present evidence "whether the inventor limited the
invention in the course of prosecution, making the claim
scope narrower than it would otherwise be."  Id. (citing
Vitronics, 90 F.3d at 1582-83; Chimie v. PPG Indus.,
Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005)).

        In Phillips, the Federal Circuit also addressed the
use of dictionaries in claim construction, reiterating
that "[i]n some cases, the ordinary meaning of claim
language as understood by a person of skill in the art
may be readily apparent even to lay judges, and claim
construction in such cases involves little more than the
application of the widely accepted meaning of commonly
understood words. . . .  In such circumstances, general
purpose dictionaries may be helpful.  Phillips, 415 F.3d
at 1314 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed.
Cir. 2001)).  With these principles in mind, the Court
turns to the terms at issue.

## II.   CLAIM CONSTRUCTION

A.   **Claim 1 of the '775 Patent:   "A locking member having an engagement section, which interferes with a portion of the operation member and thereby locks the lighting operation of the operation member"**

   **Claim 1 of the '308 Patent:   "A locking member, which interferes with the operation member and thereby locks the lighting operation of the operation member"**

   The dispute between the parties over the construction of both these disputed claim terms centers on whether or not "interferes" necessarily denotes direct physical contact.

   Plaintiffs propose the following construction for Claim 1 of the '775 Patent:

> A part of the locking member that hinders movement of a part of the operation member and thereby locks the lighter.   [¶]   The engagement section and the operation member do not have to come into direct contact with each other so long as the locking member hinders movement of the operation member by intersecting the path of the operation member.

They propose the following construction for Claim 1 of the '308 Patent:

> A locking member that hinders movement of the operation and thereby locks the lighter.   [¶]   The locking member and the operation member do not have to come into direct contact with each other so long as the locking member hinders

5

1           movement of the operation member by
          intersecting the path of the operation
2           member.

3 Joint Claim Construction and Prehearing Statement ("Jt.

4 Cl. Con. and Preh'g St.") at 3.

5

6     Plaintiffs claim their proposed construction is

7 supported by the plain language of the claim and the

8 specifications, and urge the Court to reject Defendants'

9 proposed construction because, <u>inter alia</u>, it imports a

10 limitation from a preferred embodiment, a "cardinal sin"

11 in claim construction.  Plaintiffs' Opening Brief ("Pls.'

12 Op. Br.") at 2-3.

13

14     Defendants propose the Court construe Claim 1 of

15 Patent '775 as follows:

16           The engagement section of the locking
          member is in direct contact with a
17           portion of the operation member, and
          thereby locks the lighting operation by
18           the operation member.

19     Their proposed construction of Claim 1 in Patent '308

20 reads:

21           The locking member is in direct contact
          with the operation member, and thereby
22           locks the lighting operation of the
          operation member.
23
Jt. Cl. Con. and Preh'g St. at 3.
24

25

26     They argue the Court should accept their proposed

27 construction rather than Plaintiffs' for three reasons:

28 Plaintiffs should be judicially estopped from asserting

1  their proposed construction; the ordinary meaning of
2  "interfere" denotes direct contact; and the context in
3  which it appears, i.e., the specifications in the
4  patents, indicates direct contact.  Defendants' Claim
5  Construction Brief ("Defts' Cl. Con. Br.") at 1.

6

7      **1.  Judicial Estoppel**

8      In addition to the discussion contained in the pre-
9  hearing briefs, both sides submitted post-hearing briefs
10  on the issue of whether or not Plaintiffs' position in
11  earlier litigation constitutes a sufficient basis to
12  invoke the doctrine of judicial estoppel as to Claim 1 of
13  the '775 Patent.  In their Supplemental Brief, Plaintiffs
14  argue judicial estoppel should not apply to bar their
15  proposed construction because the earlier case in which
16  they urged a different construction, <u>Tokai Corp., et al.</u>
17  <u>v. Newell Rubbermaid, Inc., et al.</u>, Case No. LACV 06-1067
18  PA, ended in an out-of-court resolution, with no ruling
19  or decision on any motion or disputed proceeding.  <u>Id.</u> at
20  1.  In particular, they rely on the principles set forth
21  by the United States Supreme Court in <u>New Hampshire v.</u>
22  <u>Maine</u>, 532 U.S. 742, 750, including the requirement that
23  the first court relied on or accepted the party's
24  previous, inconsistent, position.  <u>Id.</u> at 3.[1]  Although

25  _____

26      [1]The Supreme Court identified the following three
   factors as relevant in determining whether to invoke
27  judicial estoppel:  (1) whether a party's later position
   is "clearly inconsistent with its earlier position"; (2)
28                                        (continued...)

7

they acknowledge that a settlement on favorable terms
"can constitute judicial reliance," id. at 4, Plaintiffs
argue the Newell settlement nevertheless does not qualify
as such because there was no nexus between the stipulated
judgment in that case and Tokai's statements in its
summary judgment motion relating to the construction of
the term "interferes."   Id.

    Defendants contend, inter alia, that the second
factor identified by the Supreme Court in Maine,
successful assertion of the earlier position, is
satisfied here.  Although Defendants correctly point out
that resolution by a stipulated judgment or settlement
may support invocation of the judicial estoppel doctrine,
see Risetto v. Plumbers and Steamfitters Local 343, 94
F.3d 597, 604-05 (9th Cir. 1996), its application is not
warranted under the facts present here.

    First, Defendants insist the Newell court adopted
Plaintiffs' position, i.e., their proposed construction
of "interferes," because it entered a (stipulated)
judgment of validity of the '775 Patent.  While it is
undisputed that the settlement terms in Newell included a
judgment of validity, Defendants offer no evidence for

_____

    [1](...continued)
whether the party successfully persuaded a court to
accept its earlier position; and (3) whether the party
would derive an unfair advantage if not estopped.  532
U.S. at 750-51.

8

the rest of their proposition:  that the judgment of
validity of the '775 Patent was "supported by
[Plaintiffs'] position on 'interfere' in that case.'"
Defendants' Supplemental Claim Construction Brief Re:
Application of Judicial Estoppel Against Plaintiffs at 4.

The judgment on its face certainly contains no
specific support for such a proposition.  Its text, a
scant two paragraphs long, states only that the Patents
in Suit are valid, that the asserted prior art, alone and
in combination, "are not sufficient to invalidate the
asserted claims of the Patents in Suit," and "[a]fter
discovery, Defendants did not find a basis for proving
that the inventions described in the Patents in Suit were
ever publicly disclosed or on sale prior to one year
before the priority date claimed in each Patent in Suit."
Jt. Cl. Con. and Preh'g St., Easton Exh. 2 (Stipulated
Judgment, Case No. LACV 06-1064 PA (PJWx).  Finally, the
judgment includes a provision that Defendants admit no
liability for infringement but agree to cease using any
technology covered by the Patents in Suit for a period of
time covered by the parties' Settlement Agreement.  Id.

The Newell Court neither ruled on the pending summary
judgment motion nor issued a claim construction order
adopting Tokai's proposed construction of the disputed
claim term.  In light of the language in the judgment,

1   finding validity of the Patents in Suit, focusing on the
2   prior art defense, and containing no finding of
3   infringement, the Court finds there is no basis to find
4   Tokai successfully persuaded the <u>Newell</u> court to adopt
5   its construction of the claim term disputed here.
6   Accordingly, it declines to find Plaintiffs should be
7   judicially estopped from asserting their proposed
8   construction.
9
10      **2.  Construction**
11      Apart from the issue of judicial estoppel, which
12   applies only to Claim 1 of the '775 Patent, the parties
13   make the same arguments regarding Claim 1 of the '775 and
14   '308 Patents, and the Court addresses them together,
15   below.
16
17      As to Claim 1 of both the '775 and the '308 Patents,
18   the plain language of the patent claim supports
19   Plaintiffs' proposed construction.  As noted above, the
20   Court begins the claim construction process by giving the
21   words of the claim itself "their ordinary and customary
22   meaning . . ., the meaning that the term would have to a
23   person of ordinary skill in the art in question . . . as
24   of the [patent's] effective filing date."  <u>Phillips</u>, 415
25   F.3d at 1312-13.  To construe the disputed term as
26   Defendants propose, that is, to require "direct contact,"
27   would violate this requirement because the ordinary and
28

                              10

customary meaning of "interferes" does not include direct
or physical contact.  Rather, the ordinary and customary
meaning of the term, is broader than the narrowed
construction Defendants propose, and is captured by
"hinder," as Plaintiffs suggest.

We turn next to the specification, "the single best
guide to the meaning of a disputed term," <u>Phillips</u>, 415
F.3d at 1315 (citations omitted).  According to
Defendants, "the specification of the '775 Patent clearly
shows that the inventor used the term 'interfere' to
denote direct contact."  Defts.' Cl. Con. Br. at 9.

In so contending, however, Defendants rely on but two
of the preferred embodiments.  Defts.' Cl. Con. Br. at
10-11.  Therefore, to the extent they argue that "the
term 'interfere' is used to denote direct contact
<u>throughout the specification</u>," (Defts.' Cl. Con. Br. at
9; emphasis added), Defendants misstate the evidence.  As
Plaintiffs point out, the specification (in both the '775
and '308 Patents) uses other terms, including "may
interfere with," "can interfere with," and "obstructs the
movement of the operation member" in describing the
remaining embodiments.  Declaration of Joseph Trojan
("Trojan Decl."), Exh. 1 ('775 Patent) (col. 2, ll. 44-49
(first safety device); col. 4, ll. 20-24 (third safety
device); col. 5, ll. 31-40 (fourth safety device); col.

15, ll 36-40 (third preferred embodiment); col. 18, ll.
56-59 (fourth preferred embodiment); col. 23, ll. 6-7
(fifth preferred embodiment)); Exh. 2 ('308 Patent) (col.
2, ll. 48-54 (first safety device); col 4, ll. 27-31
(third safety device); col. 5, ll. 41-50 (fourth safety
device); col. 13, ll. 52-57 (second preferred
embodiment); 15, l. 66-col. 16, l. 2 (third preferred
embodiment); col 19, ll. 18-21 (fourth preferred
embodiment); col. 23, ll. 37-38 (fifth preferred
embodiment)).

     The significance of this is two-fold.  First, these
other uses of "interferes" in the specification
illustrate the aptness of Plaintiffs' proposed
construction, as none of them denote direct contact, much
less require it.  Furthermore, examination of the other
embodiments, which Defendants do not discuss, reveals
that their proposed construction runs afoul of one of the
fundamental precepts of claim construction, i.e., that
the specification should not be used to read limitations
into the chosen claim language.  Phillips, 415 F.3d at
1319-20 (citing SciMed Life Systems, Inc. v. Advanced
Cardiovascular Systems, Inc., 242 F.3d 1337, 1340 (Fed.
Cir. 2001) (although court must not read a limitation
from the written description into the claims, "'claims
are not interpreted in a vacuum, but are part of and are
read in light of the specification'").

1

2      By focusing on only some of the preferred embodiments
3  and ignoring others, Defendants' interpretation of
4  "interferes" fails to read it in light of the
5  specification as a whole.  Furthermore, as the
6  specifications of the two patents read as a whole – not
7  simply in light of the two preferred embodiments
8  Defendants would highlight – do not require "direct
9  contact," the latter's proposed construction would offend
10 claim construction principles by importing a feature
11 present only in two of the embodiments (in each patent)
12 ("comes into contact"; see Trojan Decl., Exh. 1 (col. 4,
13 ll. 53-58 (third safety device); col. 7, ll. 39-46
14 (same); col. 11, ll. 54-61 (first preferred embodiment));
15 Exh. 2 (col. 4, ll. 60-65 (third safety device); col. 7,
16 ll. 49-56 (same); col. 12, ll. 14-24 (first preferred
17 embodiment)).

18

19     Finally, Defendants begin their discussion of the
20 proposed construction of this term by relying on
21 dictionary definitions.  Although it is well-settled that
22 the Court may turn to dictionaries in claim construction,
23 Defendants' use of dictionary definitions to support
24 their proposed construction is flawed.  At least one, if
25 not both, of the alternate definitions it failed to
26 include in its citation lends more support to Plaintiffs'
27 proposed construction, particularly because in most of
28

13

1  the embodiments, the term "interferes" is followed by
2  "with."  The Court finds Defendants' argument that
3  dictionary definitions support their proposed
4  construction unpersuasive.

5

6  **B.   Claim 10 of the '308 Patent '308 and Claim 1 of the**
7  **'017 Patent:  "Prevents"**

8      Plaintiffs propose the Court construe "prevents" in
9  both Patents to mean "stops."  Defendants propose the
10 following construction:

11          'Prevents' requires direct contact
            between the locking element and the
12          operation member.

13
   Jt. Cl. Cons. and Preh'g St. at 3.
14

15
      Defendants' proposed construction needlessly – and
16
   improperly – adds a limitation into the claim, i.e.,
17
   "direct contact."  Reading the claim term in the context
18
   of the specifications, as required, its meaning is clear,
19
   however, and "direct contact" is not included in that
20
   unambiguous meaning.
21

22
      In Claim 10 of the '308 Patent, it is used to denote
23
   one of two positions of the locking element, which is
24
   movable between the "locking position" where "it <u>prevents</u>
25
   motion of the operation member" and the "lock release
26
   position" where "it <u>allows</u>" such motion.  Just as
27
   clearly, in Claim 1 of the '017 Patent, the claim term is
28

                                14

used to describe one of two positions of the "locking means," one a "locking position where it prevents the lighting operation" and the other, the "lock release position," where "it permits the lighting operation." Trojan Decl., Exh. 2 (col. 34, ll. 16-22; emphasis added) & Exh. 3 (Col. 44, ll. 58-63; emphasis added).

For the additional reasons set forth in Section A(2), above, with respect to the term "interferes," the Court rejects Defendants' arguments regarding the use of the phrase "comes into contact" in two of the preferred embodiments.

**C.   Claim 1 of the '017 Patent:   "Locking means"**

Plaintiffs offer the following proposed construction of this claim term:

> the combination of the locking member and the portion of the lighter case on which the locking member is mounted.

Defendants' proposed construction reads as follows:

> Construed pursuant to 35 U.S.C. § 112, ¶ 6 (means plus function) and limited to corresponding structure described in specifications and its equivalents.

Jt. Cl. Con. and Preh'g St. at 3.

The parties dispute whether this term should be construed pursuant to 35 U.S.C. § 112, ¶ 6, i.e., as a "means-plus-function" claim limitation.  Section 112, ¶ 6

of Title 35 of the United States Code permits an
applicant to express a claim limitation as a means or
step for performing a specified function without claiming
the structure that performs the function:

> An element in a claim for a combination may be
> expressed as a means or step for performing a
> specified function without the recital of
> structure, material, or acts in support thereof,
> and such claim shall be construed to cover the
> corresponding structure, material, or acts
> described in the specification and equivalents
> thereof.

35 U.S.C § 112, ¶ 6.

Defendants point out the use of the word "means" in
the claim entitles them to a presumption that 35 U.S.C. §
112, ¶6 applies.  Defts.' Cl. Con. Br. at 14, citing
Biomedino, LLC v. Waters Technologies Corp., 490 F.3d
946, 950 (Fed. Cir. 2007) (citing Altiris, Inc. v.
Symantec Corp., 318 F.3d 1363, 1375 (Fed. Cir. 2003)).
Nevertheless, "[t]his presumption can be rebutted when
the claim, in addition to the functional language,
recites structure sufficient to perform the claimed
function in its entirety."  Id.

According to Defendants, Plaintiffs cannot rebut the presumption that "locking means" should be construed as a "means-plus-function" claim limitation, because there is insufficient structure set forth in the "locking means" claim limitation to perform the claimed function.  An examination of the claim reveals Defendants are incorrect.

"Where a claim recites a function, but then goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function, the claim is not in means-plus-function format."  Sage Products, Inc. v. Devon Industries, Inc., 126 F.3d 1420, 1427-28 (Fed. Cir. 1997).  The claim here easily meets this test.  The language of the claim itself recites a structure:

- mounted (supported) on the main body (the lighter case)
- structured to be rotatable
- between two positions
- one a locking position where it prevents the lighting operation of the operation member, and
- the other a lock release position where it permits the lighting operation
- and structured to be urged toward the locking position by an urging means.

1  In light of this detailed recitation, "locking means"

2  cannot be construed as purely a means-plus-function claim

3  limitation.  Defendants argue that their opponents'

4  construction is not based on language found with the

5  claim limitation but rather is supported only in the '017

6  Patent's specification, Defts.' Cl. Con. Br. at 15, but

7  the summary above derives solely from the claim

8  limitation itself.  Although Defendants rely on

9  Biomedino, there the Federal Circuit examined both the

10  claim and the specification before concluding that

11  insufficient structure was identified to overcome the

12  means-plus-function presumption.  The claim in Biomedino

13  recited simply "control means for automatically operating

14  said valving" and "said valves," and the specification

15  said only that "unspecified equipment may be used to

16  control the regeneration process."  490 F.3d at 950.

17  Hence, the case is easily distinguished on its facts, and

18  the other authorities cited by the defense are no more

19  persuasive.

20

21      For these reasons, the Court declines to adopt

22  Defendants' proposed construction of this claim term, and

23  adopts Plaintiffs' constructions of the claim term

24  "locking means."

25

26

27              **III.   CONCLUSION**

28

1    For the reasons set forth above, the Court adopts the

2  following construction for those claims in the Patents in

3  Suit whose construction is disputed by the parties.

4

| Claim | Construction |
|---|---|
| Claim 1, '775 Patent:  "A locking member having an engagement section, which interferes with a portion of the operation member and thereby locks the lighting operation of the operation member" | A part of the locking member that hinders movement of a part of the operation member and thereby locks the lighter. [¶]   The engagement section and the operation member do not have to come into direct contact with each other so long as the locking member hinders movement of the operation member by intersecting the path of the operation member. |
| Claim 1, '308 Patent: "A locking member, which interferes with the operation member and thereby locks the lighting operation of the operation member" | A part of the locking member that hinders movement of a part of the operation member and thereby locks the lighter. [¶]   The engagement section and the operation member do not have to come into direct contact with each other so long as the locking member hinders movement of the operation member by intersecting the path of the operation member. |
| Claim 10, '308 Patent: 'Prevents' requires direct contact between the locking element and the operation member. | Stops |
| Claim 1, '017 Patent: 'Prevents' requires direct contact between the locking element and the operation member. | Stops |

19

| Claim 1, '017 Patent: "Locking means" | The combination of the locking member and the portion of the lighter case on which the locking member is mounted. |
|---|---|

Dated:   June 2, 2009

_____
VIRGINIA A. PHILLIPS
United States District Judge